IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BRENDA MITCHELL,** *Individually and as Natural Guardian and Next Friend of John Doe*     **PLAINTIFF**

V.     **CAUSE NO. 3:20-CV-566-CWR-LGI**

**PEARL PUBLIC SCHOOL DISTRICT, ET AL.**     **DEFENDANTS**

*consolidated with*

**CHRISTINE FITZGIBBONS,** *Individually and as Natural Guardian and Next Friend of John Doe*     **PLAINTIFF**

V.     **CAUSE NO. 3:21-CV-41-CWR-LGI**

**PEARL PUBLIC SCHOOL DISTRICT, ET AL.**     **DEFENDANTS**

## ORDER

Before the Court is the defendants' motion for summary judgment. Docket No. 60. On review, the motion will be granted as to the plaintiffs' federal claims and deferred as to the plaintiffs' claims under Mississippi law.

I.    **Factual and Procedural History**

Brenda Mitchell is the mother of C.M., a former student in the Pearl Public School District. Christine Fitzgibbons is the mother of B.B., a current student in the District. They brought this suit seeking damages for the sexual assaults that older students enacted upon C.M. and B.B. while members of the Pearl High School track team.

When he was a seventh-, eighth-, and ninth-grader, older students subjected C.M. to "dry humping" and digital anal penetration in the locker room and on track team trips. As an eighth-

and ninth-grader, B.B. was subjected to persistent dry humping and, while fully clothed, anal penetration with a broomstick and a roller (used to roll out leg muscles).

B.B. testified that he notified Coach Christopher Barnett of these activities, but the Coach failed to put a stop to them and denied B.B.'s request to move hotel rooms.[1] "He's even heard me yell out, 'Quit sticking shit up my ass,'" B.B. testified. "And all his only response was to quit the horseplay." B.B. added that Coach Barnett personally witnessed, on separate occasions, attempted anal penetration of a student and dry-humping, only to reply each time, "Quit horseplaying."

Upon learning of these events, Brenda Mitchell contacted Coach Barnett and the Mayor of the City of Pearl. A police investigation ensued. The students told the police about the assaults. Under threats of violence from other students, however, B.B. recanted his story. He explained that the investigating officer shook B.B.'s hand "and told me I was a real man, that I made the right decision." B.B. adds that he was then investigated for making a false statement to police and subjected to a campaign of retaliatory acts by school officials.

C.M. never recanted his testimony. Despite this, the police department's report "did not find any evidence that a sexual assault had occurred." It appears that the investigating officer did not find C.M. credible.

The school district did not conduct its own investigation, essentially deferring to the police department's investigation. This suit followed.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] In the plaintiffs' view, among other things, the Coach should have abandoned his custom of placing older and younger students together in the same hotel room.

Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

### III.   Discussion

#### A.   Due Process Claims

The plaintiffs first assert a substantive due process claim. They argue that Coach Barnett created a danger to C.M. and B.B. by witnessing child sexual abuse, but then did nothing about that danger, or worse, exacerbated the harm by forcing the plaintiffs to return to their hotel rooms with their abusers. Docket No. 68 at 5.

Unfortunately for the plaintiffs, binding Fifth Circuit precedent forecloses their substantive due process claim. That court has been clear. A public school does not have a constitutional duty "to ensure that its students are safe from private violence" unless school officials have taken students "into custody and [held] them there against their will in the same way that a state takes prisoners, involuntarily committed mental health patients, and foster

3

children into its custody." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 857–58 (5th Cir. 2012) (en banc) (citation omitted).

Here, there is no evidence that Coach Barnett or any other school official involuntarily committed or took into custody C.M. and B.B. Accordingly, school officials had no duty to protect them from violence at the hands of private parties. This is true even though the school district has allowed, recruited, and encouraged seventh-grade children to participate on the track team with much older students. The plaintiffs have preserved their arguments for appellate review.

### B. Equal Protection Claims

The plaintiffs then advance an equal protection claim. They contend that the defendants singled them out for differential treatment on account of their sex, because "matters would be seen differently had the same male offenders done the same with female students of the same age." Docket No. 68 at 9.

The plaintiffs may or may not be correct about that. We do not know because they have not put forward any evidence supporting their equal protection theory. At this point, it is merely speculation. As a result, summary judgment is appropriate.

### C. *Monell* Claims

In § 1983 cases, municipalities are liable only if a policy, custom, or practice causes a constitutional deprivation. *See Brown v. Bryan Cty., Okla.*, 219 F.3d 450, 453 (5th Cir. 2000).

Here, because there has been no constitutional deprivation, there can be no municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("neither *Monell v. New York City Dept. of Social Services* . . . nor any other of our cases authorizes the award of damages

4

against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"). This claim is dismissed.

### D. State Law Claims

The Court declines to take up the plaintiffs' state-law causes of action, mindful of the "general rule" that "courts should decline supplemental jurisdiction [over state law claims] when all federal claims are dismissed or otherwise eliminated from a case." *Certain Underwriters at Lloyd's, London v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006). They will have to be adjudicated in state court.

### IV. Conclusion

The motion for summary judgment is granted in part. A separate Final Judgment shall issue this day. Pursuant to 28 U.S.C. § 1367(c), the plaintiffs' federal claims will be dismissed with prejudice, while their state-law claims will be dismissed without prejudice to their timely refiling in a court of competent jurisdiction.

**SO ORDERED**, this the 24th day of January, 2022.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE